IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

WADE ALAN WILLARD, JR.,                                                                                  PLAINTIFF

V.                                          CIVIL ACTION NO. 1:19-CV-908-RPM

CHRISTOPHER RYAN HEARN, ET AL.,                                    DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

### I.     Introduction

Before the Court is a motion by defendants Christopher Ryan Hearn ("Officer Hearn"), Russell Holliman, Jr. ("Officer Holliman"), William Collins ("Officer Collins"), and D. Wade Bryant ("Officer Bryant") (collectively, "defendants") seeking summary judgment on the grounds that plaintiff Wade Alan Willard, Jr. ("Willard") failed to exhaust his administrative remedies under 42 U.S.C. § 1997e(a) ("Section 1997e(a)") before filing the instant 42 U.S.C. § 1983 ("Section 1983") lawsuit. Doc. [45].

### II.     Construing the Complaint

Liberally construing the supplemented Complaint,[1] *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam), the Court understands Willard to be asserting five claims: (i) a Fourth Amendment excessive force claim against Officer Hearn; Doc. [44], (T. 12–17); (ii) a malicious prosecution claim against Officers Holliman, Collins, and Bryant arising from the same events as his excessive force claim, Doc. [1], at 6; (iii) a defamation claim against Officers Holliman, Collins, and Bryant arising from these same events, *id.*, at 8; [44], (T. 34–36); (iv) a defamation claim against Harrison County, MS ("Harrison County") brought on the grounds

---

[1] *See Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (noting that *Spears* hearing testimony is "in the nature of a [Fed. R. Civ. P. 12(e)] motion for more definite statement.") (quotation omitted).

1

that the county sheriff defamed Willard by claiming on television that he threw a duffle bag filled with heroin out of a car, *ibid.*; and (v) a municipality deliberate indifference claim against Harrison County, Doc. [44], (T. 30–33).[2]

### III. Facts

On December 4, 2017, state police attempted to arrest Willard, a wanted fugitive, near the corner of Canal Road and Landon Road in Gulfport, MS. Doc. [1], at 6; [44], (T. 12); [45], Ex. 1, at 82. Willard fled from the officers, including at least Officer Hearn, in a stolen vehicle that he eventually crashed in Pass Christian, MS; a "foot race" ensued. *Ibid.* Officer Hearn was the only officer able to keep pace with Willard. *Id.*; Doc. [44], (T.10–11). Eventually catching up with Willard after a quarter of a mile, Officer Hearn allegedly slammed Willard into a tree and hit him in the back of the head with a flashlight. Doc. [44], (T. 10–11, 16–17). Willard claimed that he "knocked a chunk out of the tree," was rendered unconscious, and suffered a "cracked" skull, "tilted" teeth, and scarring as a result of Officer Hearn's actions. *Id.*, (T. 11, 13). According to Willard, Officers Holliman, Collins, and Bryant did not touch him, but they did "defame" him and "commit perjury" by putting "false statements" in their respective incident reports about Officer Hearn's successful apprehension of Willard. Doc. [1], at 8; [44], (T. 21–27, 34–35). By "false statements," Willard elaborates that the officers claimed that he became violent and attacked at least some responding officers. *Ibid.* After his arrest, Willard was brought to Memorial Hospital for medical treatment; the visit lasted two hours. *Id.*, (T. 30, 32). According to Willard, a hospital doctor concluded that he "should" return to the hospital a week later for a follow-up appointment.

---

[2] At his *Spears* hearing, Willard also testified that he was suing Harrison County because he believed that it was the employer of the individual officers. Doc. [44], (T. 30). However, Willard cannot sue Harrison County on a theory of vicarious liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). When asked if he was suing Harrison County for any other reason in connection with the excessive force claim, Willard responded in the negative. *See* Doc. [44], (T. 30). In turn, there is no municipality excessive force claim against Harrison County. While the Court must liberally construe Willard's supplemented Complaint, *Erickson*, 551 U.S. at 94, 127 S.Ct. 2197, it cannot create a claim where none exists.

*Id.*, (T. 31). Notwithstanding this medical advice, Willard claims, Harrison County declined to send him back to the hospital for that appointment. *Id.*, (T. 32). Willard also claims that Harrison County defamed him because the county sheriff stated on television that Willard threw a duffle bag full of heroin out of a car. *Id.*, (T. 35–36).

### IV. Standard of Review

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "All facts and inferences must be viewed in the light most favorable to the non-movant." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (citing *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000)). "'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Nevertheless, a motion for summary judgment for failure to exhaust is treated slightly differently. *See*, *e.g.*, *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). "Exhaustion resembles personal jurisdiction and venue in that it is an affirmative defense that allows defendants to assert

that plaintiffs have not invoked the proper forum for resolving a dispute." *Id.* at 272 (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)). Stated differently, exhaustion of administrative remedies is a "rule of judicial administration" that is "akin to doctrines like 'abstention, finality, and ripeness . . . that govern the timing of federal-court decision-making.'" *Id.* (citations omitted). Since exhaustion of administrative remedies is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Ibid.*

## V. Analysis

Upon passing the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321–71, as amended, 42 U.S.C. § 1997e, *et seq.*, Congress provided strong medicine to curb the proliferation of meritless prisoner cases in the federal courts, *Woodford v. Ngo*, 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The requirement that a prisoner exhaust his administrative remedies before filing a Complaint in federal court is a "centerpiece" of the PLRA. *Jones v. Bock*, 549 U.S. 199, 212, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (quoting *Woodford*, 548 U.S. at 84, 126 S.Ct. 2378). The public policy reasons behind the PLRA's exhaustion requirement are well-known. For one, "[r]equiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204, 127 S.Ct. 910. Furthermore, "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Woodford*, 548 U.S. at 93, 126 S.Ct. 2378 (quoting *Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)).

4

Therefore, Section 1997e(a), passed as part of the PLRA, requires that a prisoner, who is "confined in any jail, prison, or other correctional facility," must exhaust his available administrative remedies before filing a claim about "prison conditions" in federal court. 42 U.S.C. § 1997e(a).³ The U.S. Supreme Court has interpreted "prison conditions" broadly to reach "all inmate [claims] about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532, 122 S.Ct. 983. Considering the broadness of "all inmate suits about prison life," *ibid.*, the statute's broad sweep captures claims by, for example, pretrial detainees, *United States v. Khan*, 540 F. Supp. 2d 344, 350 (E.D.N.Y. 2007); prisoners located in drug-treatment facilities, *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 174–75 (2d Cir. 2006); and prisoners in transit between prisons, *Baxter v. Goodwell*, No. CIV A H–06–2957, 2006 WL 2846871 (S.D. Tex. Sept. 29, 2006). Nevertheless, while the scope of prisoner lawsuits subject to the PLRA is broad, it is plainly not limitless. "[T]he obvious limit to the plain wording of the term 'prison conditions' is that *only* [claims] relating to conditions within a prison or correctional facility are subject to the exhaustion requirements." *Witzke v. Femal*, 376 F.3d 744, 752 (7th Cir. 2004) (emphasis added). As such, when considering whether a claim is about prison life or conditions, the Court focuses on whether the claim arises from conduct or events occurring in prison, *Manemann v. Garrett*, 484 F. App'x 857, 857–58 (5th Cir. 2012) (holding that prisoner needed to exhaust administrative remedies before asserting claim that prison staff's deliberate indifference exacerbated preexisting medical condition); *Almahdi v. Ridge*, 201 F. App'x 865, 868 (3d Cir. 2006) (holding that prisoner's claim that Department of

---

³ In full, Section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

> [42 U.S.C. § 1997e(a).]

5

Case 1:19-cv-00908-RPM   Document 58   Filed 09/08/21   Page 6 of 8

Homeland Security improperly placed his name on a national watch list is not a claim about prison conditions), not the claim's potential nexus to conduct or events occurring outside of prison, *see, e.g.*, *Wilson v. Thomas*, No. CIV.A. H–07–1104, 2008 WL 2491650 (S.D. Tex. June 18, 2008) (holding that excessive force claim arising from free world arrest did not need to be exhausted, but medical deliberate indifference claim related to injuries suffered during arrest needed to be exhausted).

Here, Willard was not required to exhaust any administrative remedies before raising four claims presently before the Court because those claims do not concern prison life or prison conditions. *Witzke*, 376 F.3d at 752. First, Willard's excessive force claim arises from Officer Hearn's actions after a car chase and "foot race" spanning Gulfport and Pass Christian. Doc. [1, 44]. Since this claim plainly does not concern prison life or prison conditions, it is not captured by the PLRA exhaustion requirement and, therefore, Willard did not need to pursue administrative remedies before filing this claim. *See, e.g.*, *Wilson*, 2008 WL 2491650, at *4 n.4 (holding that prisoner-plaintiff's excessive force claim arose from free world arrest and did not require exhaustion); *Davis v. Mancuso*, No. 05–2217–LC, 2006 WL 2714456, at *4 (W.D. La. Aug. 8, 2006) (noting that use of excessive force during free world arrest does not require exhaustion); *Roach v. Bandera Cty.*, No. CIV.A.SA–02–CA–106XR, 2004 WL 1304952, at *5 (W.D. Tex. June 9, 2004) (same). *See also Cheatham v. Saturne*, No. 1:18–CV–3154–SCJ–LTW, 2019 WL 10631254, at *1 (N.D. Ga. Mar. 1, 2019) (collecting cases from around the country establishing that an excessive force claim arising from free world arrest does not require exhaustion), *report and recommendation adopted*, No. 1:18–CV–3154–SCJ, 2019 WL 10631251 (N.D. Ga. Aug. 2, 2019). Second, Willard's malicious prosecution and defamation claims against Officers Holliman, Collins, and Bryant arise from the same factual nucleus as his excessive force claim insofar as

6

Willard alleges that these defendants wrote false, defamatory, and perjured reports about the events surrounding his arrest. Doc. [44], (T. 21–27, 34–35). Plainly, these claims do not concern prison life or prison conditions and, therefore, Willard did not need to pursue administrative remedies before filing these claims. *Cheatham*, 2019 WL 10631254, at *1. Finally, Willard's defamation claim against Harrison County about the county sheriff's television statements plainly has no relationship to prison life or prison conditions. Doc. [44], (T. 35–36). As such, Willard did not need to exhaust his administrative remedies prior to filing this claim. *Almahdi*, 201 F. App'x at 868.

Nevertheless, the Court raises *sua sponte* the issue of whether Willard was required to exhaust his administrative remedies before filing his municipality deliberative indifference claim against Harrison County. 28 U.S.C. § 1915(e)(2)(B)(ii).[4] Willard alleged that Harrison County's policies and procedures resulted in prison medical staff ignoring a doctor's admonition that Willard should return to Memorial Hospital for a follow-up appointment. Doc. [1, 44]. While his injuries giving rise to these allegations occurred outside of prison walls, Willard's deliberate indifference claim itself concerns the medical treatment or lack thereof that he received *in prison and by prison medical staff* for his injuries. Doc. [44], (T. 30–32). In turn, Willard's municipality deliberate indifference claim directly concerns prison life or prison conditions. *Manemann*, 484 F. App'x at

---

[4] In passing, the Court notes that it did not consider either party's "joinder in document" filings. Doc. [49, 50]. For one, our Local Rules do not allow for it insofar as every action for relief must be made by a motion. *See Conway v. Biloxi Public School District, et al.*, 1:20–CV–00107–LG–MTP, at *3 (S.D. Miss. Dec. 17, 2020); *Nat'l Sec. Fire & Cas. Ins. Co. v. Townsend*, No. 4:17–CV–64–DMB–JMV, 2018 WL 4481872, at *2 n.3 (N.D. Miss. Sept. 17, 2018). *See also* L.U.Civ.R. 7(b). Furthermore, "motion joinder" is not expressly contemplated in the Federal Rules of Civil Procedure. *See, e.g., In re: Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, No. 08–80421–CIV, 2017 WL 5308031, at *4 (S.D. Fla. July 5, 2017). Finally, for practical purposes, "'joining' in a motion creates a variety of administrative and legal obstacles to the Court in monitoring the status of and resolving motions." *See, e.g., Witt v. Condominiums at Boulders Ass'n*, No. CIVA04–CV–02000–MSK–MEH, 2007 WL 840509, at *1 n.2 (D. Colo. Mar. 19, 2007).

857–58; *Wilson*, 2008 WL 2491650, at *5–*6.  Therefore, he was required to exhaust this claim. 42 U.S.C. § 1997e(a).

Finally, the Court addresses whether Willard exhausted his administrative remedies in connection with his municipality deliberate indifference claim against Harrison County. Harrison County Adult Detention Center has a formal grievance process, which Willard is aware of. *See*, *e.g.*, Doc. [44], (T. 47–48); [45], Ex. 2–3. In his original Complaint and at his *Spears* hearing, Willard admitted that he did not exhaust his administrative remedies before filing the municipality deliberate indifference—or any other—claim. Doc. [1], at 3; [44], (T. 48–49). Willard's inmate records further reflect that he did not file a grievance related to his medical care. Doc. [45], Ex. 1, at 213–19. As a result, Willard's municipality deliberate indifference claim must be dismissed for his failure to exhaust available administrative remedies before filing the claim. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

**IT IS THEREFORE ORDERED AND ADJUDGED** that the defendants' [45] motion for summary judgment is **DENIED**. However, the Court *sua sponte* dismisses Willard's municipality deliberate indifference claim against Harrison County without prejudice for failure to exhaust. 28 U.S.C. § 1915(e)(2)(B)(ii).

**SO ORDERED**, this the 8th day of September 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE